IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| **MICHAEL KOKOSKI,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| v. ) | **Civil Action No. 5:12-2150** |
| ) | **(Criminal No. 5:96-0064)** |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Petitioner filed a Petition for the Writs of Coram Nobis and of Audita Querela citing 28 U.S.C. § 1651, the All Writs Act, on June 19, 2012. (Document No. 198.)[1] Petitioner contends that his conviction of escape in violation of 18 U.S.C. § 751(a)[2] and sentence as a career offender in United States v. Kokoski, Criminal No. 5:96-0064, should be vacated in view of the decision of the United States Supreme Court in Chambers v. United States, 555 U.S. 122, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009), and the decision of the Fourth Circuit Court of Appeals in United States v. Clay, 627 F.3d 959 (4th Cir. 2010), concluding essentially that escape convictions for failing to report to

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[2] 18 U.S.C. § 751(a) provides as follows:

Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the Untied States by any court, judge, or magistrate judge, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of a an arrest  on a charge of felony, or conviction of any offense, be fined under this title or imprisoned not more than five years, or both . . ..

a penal institution and walking away from an unsecured facility are not qualifying crimes of violence under the Armed Career Criminal Act [ACCA] and the career offender provisions of the United States Sentencing Guidelines. Petitioner states that "the Chambers and Clay cases reflect a substantive change of law which may demonstrate that the conduct involved in the petitioner's conviction for felony escape is no longer criminal under the career offender provisions of the USSG." (Document No. 198, p. 6.) For the reasons stated below, the undersigned respectfully recommends that Petitioner's Petition should be denied.

## BACKGROUND

On March 6, 1992, a Criminal Complaint was filed charging Petitioner with conspiring to distribute LSD in violation of 21 U.S.C. § 846. Shortly thereafter in March, 1992, Petitioner was charged in an Indictment with possession with the intent to distribute marijuana and LSD in violation of 21 U.S.C. § 841(a)(1). United States v. Kokoski, Criminal No. 5:92-0090. In July, 1992, a four count Superseding Indictment was filed charging Petitioner with conspiracy to distribute and distribution of LSD to a person under twenty-one years of age in violation of 21 U.S.C. §§ 841(a)(1), 846, 856 and 861(a)(1). On July 27, 1994, Petitioner pled guilty to Count Four of the Superseding Indictment, employing a person under eighteen years old to distribute LSD in violation of 21 U.S.C. §§ 841(a)(1) and 861(a)(1). Proceedings in United States v. Kokoski, Criminal No. 5:92-0090, were delayed after Petitioner entered his guilty plea while the Court considered whether Petitioner was competent. *See* United States v. Kokoski, 865 F. Supp. 325 (S.D.W.Va. 1994). Petitioner was found competent, and the Court imposed sentence on September 19, 1994. Petitioner was sentenced to 144 months in prison and a six year term of supervised release and assessed a $5,000 fine. Plaintiff appealed his sentence challenging the District Court's competency determination and denial of credit

for acceptance of responsibility. The Fourth Circuit affirmed the District Court's judgment, and the Supreme Court denied *certiorari*. *See* United States v. Kokoski, 83 F.3d 411, 1996 WL 181482 (4th Cir.(W.Va.)), *cert. denied*, 519 U.S. 892, 117 S.Ct. 233, 136 L.Ed.2d 163 (October 7, 1996). While serving his term of imprisonment, Petitioner left the Satellite Prison Camp[3] at FCI Beckley on April 28, 1996, without authorization.[4] Petitioner was charged with escape in violation of 18 U.S.C. § 751(a), in United States v. Kokoski, Criminal No. 5:96-0064. Petitioner was arrested on State charges in Montana on January 2, 1999, and was transferred into Federal custody on December 3, 1999. Petitioner pled guilty to the escape charge in Criminal No. 5:96-0064 and was sentenced on May 9, 2000, to 37 months in prison and a three year term of supervised release to run consecutively with his earlier sentence.[5] Petitioner appealed alleging that the District Court erred in sentencing him

---

[3] Satellite Prison Camps [SPCs] are minimum security institutions with limited or no perimeter fencing.

[4] According to Petitioner's Presentence Investigation Report, after dinner on April 28, 1996, an inmate reported that Petitioner was seen running through the prison camp breeze way toward a wooded area. A Correctional Officer searched the area but did not find Petitioner. An emergency count was conducted, and Petitioner was confirmed to be missing. A further search was conducted of the area outside the camp. The Federal Bureau of Investigation and United States Marshal Service were notified. A formal search was conducted of the community, and announcements and warning were communicated to the community. *United States v. Kokoski*, Criminal No. 5:96-0064 (Document No. 91, ¶¶ 13 and 14.)

[5] According to the Presentence Investigation Report, Petitioner's Base Offense Level was 13, and he was entitled to a two point reduction for acceptance of responsibility. *United States v. Kokoski*, Criminal No. 5:96-0064 (Document No. 91, ¶¶ 22 and 27.) Because Petitioner's escape conviction was regarded as a crime of violence and he had at least two prior felony controlled substance convictions, Petitioner qualified as a career offender under the United States Sentencing Guidelines and his Base Offense Level was adjusted to 17. (Id., ¶ 29.) With three points credit for acceptance of responsibility, Petitioner's Total Offense Level was 14. (*Id.*, ¶ 31.) Petitioner had 10 criminal history points putting him in Criminal History Category V (*Id.*, ¶ 47.), but his Criminal History Category was increased to VI because he qualified as a career offender under U.S.S.G. § 4B1.1 (*Id.*, ¶ 48). The sentencing range for Offense Level 11, Criminal History Category V is 24 – 30 months in prison. The sentencing range for Offense Level 14, Criminal History Category VI is 37 – 46 months in prison.

as a career offender under U.S.S.G. § 4B1.1 because his escape was not a "crime of violence" and he was entitled to a downward adjustment under U.S.S.G. § 2P1.1(b)(3) because his escape was non-violent.[6] The Fourth Circuit affirmed the District Court's judgment on December 19, 2000, and the Supreme Court denied *certiorari* on April 23, 2001. *See* United States v. Kokoski, 238 F.3d 416, 2000 WL 1853389 (4th Cir.(W.Va.)), *cert. denied*, 532 U.S. 999, 121 S.Ct. 1665, 149 L.Ed.2d 646 (2001). Petitioner initiated *habeas corpus* proceedings respecting his escape conviction. Kokoski v. United States, 5:02-0079. The District Court dismissed Petitioner's *habeas corpus* proceedings on March 15, 2005. (Id., Document No. 139.) Petitioner appealed, and the Fourth Circuit denied a certificate of appealability and dismissed his appeal. (Id., Document No. 170.)

## **DISCUSSION**

28 U.S.C. § 2255 provides for collateral relief for persons who remain "in custody." The relevant portion of Section 2255 provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Collateral relief is available to persons who have completed their sentences and are therefore not in

---

[6] U.S.S.G. § 4B1.1(a) provides that a defendant is a career offender if "(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.2(a) provides that a crime of violence is an offense punishable by a prison term exceeding one year which "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious risk of physical injury to another."

custody under very limited circumstances through Writs of Error *Coram Nobis* and Writs of *Audita Querela* issued under 28 U.S.C. § 1651, the All Writs Act. The United States Supreme Court explained in Pennsylvania Bureau of Corrections v. United States Marshals Service, 474 U.S. 34, 43, 106 S.Ct. 355, 361, 88 L.Ed.2d 189 (1985), as follows:

> The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling.

Writs of Error *Coram Nobis* provide "essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction." Fleming v. United States, 146 F.3d 66, 89 - 90 (2nd Cir. 1998); *see also* United States v. Mandanici, 205 F.3d 519, 524 (2nd Cir. 2000). "[C]ourts may consider coram nobis petitions only where no other remedy is available and the petitioner presents sound reasons for failing to seek relief earlier." United States v. Mills, 221 F.3d 1201, 1204 (11th Cir. 2000), *cert. denied*, 531 U.S. 1144, 121 S.Ct. 1079, 148 L.Ed.2d 956 (2001).[7] The Supreme Court reiterated in Carlisle v. United States, 517 U.S. 416, 428 - 429, 116 S.Ct. 1460, 1468, 134 L.Ed.2d 613 (1996), from its note in United States v. Smith, 331 U.S. 469, 475, fn. 4, 67

---

[7] Petitioner completed his sentences in Criminal Nos. 5:92-0090 and 5:96-0064 and began his term of supervised release in June, 2008. *United States v. Kokoski*, 5:96-0064, Document No. 194. The District Court transferred jurisdiction over his supervision to the United States District Court for the Southern District of Ohio in September, 2009. *Id.* The Ohio District Court revoked Petitioner's term of supervised release twice, and Petitioner was incarcerated for additional 2 and 34 month periods. The Ohio District Court indicated in revoking Petitioner's term of supervised release for the second time and sentencing him to an additional 34 months in prison that he would no longer be under supervision when he completed the additional 34 month term. *United States v. Kokoski*, Criminal No. 1:09-0145, Document No. 49, in the United States District Court for the Southern District of Ohio. The Bureau of Prisons' Inmate Locator indicates that Petitioner was released from custody on September 26, 2012. Petitioner was therefore in custody when he filed his Petition in this matter but has since been released and is no longer under supervision. 28 U.S.C. § 2255 was available to Petitioner while he was in custody and under supervision and became unavailable to him on September 26, 2012, when he was released from custody and no longer under supervision. Petitioner's only recourse after that is under the All Writs Act.

S.Ct. 1330, fn.4, 91 L.Ed. 1610 (1947), that "it is difficult to conceive of a situation in a federal criminal case today where [a writ of *coram nobis*] would be necessary or appropriate."

Proceedings may be held in *coram nobis* to consider errors "of the most fundamental character." United States v. Morgan, 346 U.S. 502, 512, 74 S.Ct. 247, 253, 98 L.Ed. 248 (1954). They may not, however, supplant proceedings under Section 2255, United States v. Barrett, 178 F.3d 34, 55, (1st Cir. 1999), *cert. denied*, 528 F.2d 1176, 120 S.Ct. 1208, 145 L.Ed.2d 1110 (2000), or be utilized to re-litigate issues raised on direct appeal or under Section 2255. United States v. Bazuaye, 399 Fed.Appx. 822 at *1 (4th Cir. 2010)("Federal Courts have the authority to grant relief from a conviction via a writ of error coram nobis after the expiration of a sentence."); Durrani v. United States, 294 F.Supp.2d 204, 209 - 210 (D.Conn. 2003); Sun v. United States, 342 F.Supp.2d 1120, 1126 (N.D.Ga. 2004), *aff'd*, 151 Fed. Appx. 860 (11th Cir. 2005), *cert. denied*, 546 U.S. 1200, 126 S.Ct. 1399, 164 L.Ed.2d 100 (2006)("A writ of error coram nobis is only appropriate when claims could not have been raised by direct appeal, or the grounds to attack the conviction become known after a completed sentence when § 2255 relief is unavailable"). Thus, before considering a request for relief in *coram nobis* on its merits, the Court must determine whether the request is properly before the Court and may refuse to consider the request if it is not. Durrani v. United States, 294 F.Supp.2d 204, 209 - 210 (D.Conn. 2003). Adopting "the same analytical framework when ruling on the propriety of current coram nobis petition as when analyzing successive habeas corpus petition", the Court in Durrani stated that "the court will refuse to entertain a coram nobis petition if: (1) the same grounds presented in the current petition were determined adversely to petitioner in an earlier collateral proceeding; (2) the prior determination was on the merits; and (3) the 'ends of justice' would not be served by reaching the merits of the repetitive grounds in the current petition." Durrani v. United States, 294 F.Supp.2d at 210; *see also* Shepis v. United States, 2008 WL 474237 * 6

6

(D.S.C.). The ends of justice are served in reconsidering a previous determination on the merits when, among other things, there has been a change in the applicable law since the previous determination. Durrani v. United States, 294 F.Supp.2d at 211, *quoting* U.S. ex rel. Schnitzler v. Follette, 406 F.2d 319, 321 (2nd Cir. 1969). When the District Court has determined that it is appropriate to consider a request for relief in *coram nobis* on the merits, the District Court may grant *coram nobis* relief if the petitioner demonstrates that "1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate early relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." Fleming v. United States, 146 F.3d at 90, *quoting* Foont v. United States, 93 F.3d 76, 79 (2nd Cir. 1996)(internal quotation marks, citations and alterations omitted); see also Hanan v. United States, 402 F.Supp.2d 679, 684 (E.D.Va. 2005), stating that "to obtain *coram nobis* relief, [a petitioner] must show (i) that his conviction or sentence involved an error of the most fundamental character; (ii) that it is probable that a different result would have occurred if not for the error; (iii) that adverse consequences continue to follow from the conviction such that a case or controversy exists within the meaning of Article III; (iv) that a more usual remedy is not presently available to correct the error; and (v) that sound reasons exist for not challenging the error earlier, such as by direct appeal or § 2255 motion." *See also* United States v. Bazuaye, 399 Fed.Appx. 822 at *1 (4th Cir. 2010)("To be entitled to coram nobis relief, the petitioner must demonstrate that: '(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character.'" *quoting* Hirabayashi v. United States, 828 F.2d 591, 604 (9th Cir. 1987).) "[A] court reviewing a petition for a writ of *coram nobis* to vacate a conviction must presume that the underlying proceedings were correct, and the burden of showing

7

otherwise rests on the petitioner. And, that burden is substantial, exceeding that of a habeas petitioner." Hanan v. United States, 402 F.Supp.2d at 684. A Writ of Error Coram Nobis may be granted "in light of a retroactive dispositive change in the law" which undermines the basis for a prior conviction. United States v. Mandel, 862 F.2d 1067, 1075 (4th Cir. 1988). "[N]ewly discovered evidence does not constitute a fundamental error sufficient to justify coram nobis relief." Sun v. United States, 342 F.Supp.2d 1120 at 1127. The mere allegation that prosecutors withheld exculpatory evidence does not support *coram nobis* consideration. Durrani v. United States, 294 F.Supp.2d at 215 - 216.

Writs of *Audita Querela* are available when there is a legal objection to a conviction which has arisen after sentencing for which there is no other remedy. United States v. Hairston, 2009 WL 891929, * 2 (N.D.W.Va.), quoting United States v. LaPlante, 57 F.3d 252, 253 (2nd Cir. 1995). As Writs of Error *Coram Nobis*, Writs of *Audita Querela* may be issued "only to the extent that they 'fill the gaps' in the current system of federal post-conviction relief." United States v. Hairston, 2009 WL 891929, * 2 (N.D.W.Va.), *quoting* Doe v. INS, 120 F.3d 200, 203 (9th Cir. 1997).

Considering in the first place whether Petitioner's request for a Writ of Coram Nobis is properly before the Court, the undersigned finds that the same grounds which Petitioner raises in this matter were considered on the merits and determined adversely to Petitioner in Petitioner's 2000 appeal of his sentence upon his escape conviction. The first two of the three criteria for finding that Petitioner's request should be refused as set forth in Durrani are therefore met. It remains to determine whether considering the grounds again in this matter would serve the ends of justice. The United States Supreme Court decided Chambers in 2009. As noted below, the Tenth Circuit Court of Appeals concluded in United States v. Shipp, 589 F.3d 1084, 1089 - 1091 (10th Cir. 2009) that Chambers may be applied retroactively in collateral proceedings to determine whether a prior escape

conviction should be considered a qualifying crime of violence under the ACCA. Assuming that Chambers applies retroactively to the determination that Petitioner's escape conviction qualified as a crime of violence under the career offender provisions of the Sentencing Guidelines, the ends of justice would be served in reconsidering whether Petitioner's escape conviction qualifies as a crime of violence as Chambers amounted to a change in the applicable law which occurred after the previous determination and potentially undermines the basis for Petitioner's prior sentence. The undersigned therefore finds that Petitioner's request for a Writ of Coram Nobis is properly before the Court, and proceeds to consider whether he is entitled to the issuance of the Writ.

Petitioner claims that he is entitled to a Writ of Coram Nobis because Chambers requires that his escape conviction under 18 U.S.C. § 751(a) should not have been considered a qualifying crime of violence under the career offender provisions of the Sentencing Guidelines. It is evident from the Supreme Court's decision in Chambers and the Fourth Circuit's decisions in Clay and United States v. Bethea, 603 F.3d 254, 256 (4th Cir. 2010), that one of two analytical methods – the categorical or the modified categorical method – are utilized to determine whether, in view of the language of the statute under which a prior escape conviction occurred, the conviction was properly regarded a qualifying crime of violence under the ACCA or the Sentencing Guidelines. In Chambers, the United States Supreme Court considered whether in sentencing Mr. Chambers upon his conviction for being a felon in possession of a firearm, his earlier conviction for failing to report for penal confinement in Illinois involved conduct that presented a serious potential risk of physical injury to another such that it should be regarded a crime of violence under the Armed Career Criminal Act. Mr. Chambers had been sentenced in Illinois to 11 weekends in prison and failed to report for confinement on 4 weekends. He was therefore convicted of failing to report to a penal institution in violation of an Illinois statute. The Supreme Court used the categorical approach for determining whether a

9

conviction qualifies as a crime of violence which it employed in Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008). The Court found that the Illinois statute placed several different kinds or categories of conduct including escape from a penal institution and failure to report for service of a sentence and for work release in a single numbered section. Chambers, 555 U.S. at 126, 129 S.Ct. at 691. The Court indicated that the focus is upon the generic behavior which likely underlies each particular kind or category of conduct included in the statute. The Supreme Court separately categorized escape from a penal institution and failure to report for service of a sentence stating that "[t]he behavior that likely underlies a failure to report would seem less likely to involve a risk of physical harm than the less passive, more aggressive behavior underlying an escape from custody." Id. The Supreme Court held that failure to report is a "form of inaction" that does not constitute "purposeful, violent and aggressive conduct". Chambers, 129 S.Ct. at 692. The Supreme Court concluded that a conviction for failing to report is not a violent felony under the Armed Career Criminal Act. Chambers, 129 S.Ct. at 693.

In Clay, the Fourth Circuit Court of Appeals considered whether in sentencing Mr. Clay upon his conviction for being a felon in possession of a firearm, Mr. Clay's conviction of escape from the Gainesville, Georgia, Diversion Center qualified as a crime of violence under the United States Sentencing Guidelines' career offender provisions. The Court examined the Georgia escape statute and concluded that the statute did not fall under the specific language contained in U.S.S.G. § 4B1.2(a)(1) and (2) and therefore it should be determined whether the statute fell within the scope of that section's Otherwise Clause. Clay, 627 F.3d at 965. The Court then considered whether it should utilize the categorical approach or the modified categorical approach citing its decisions in United States v. Bethea, 603 F.3d 254, 256 (4th Cir. 2010), and United States v. Seay, 553 F.3d 732,

737 (4th Cir. 2009), and determined that the modified categorical approach applied. United States v. Clay, 627 F.3d at 966 - 967. The Court agreed with the holdings of five other Circuits that "the generic crime of walk-away escape from an unsecured facility does not qualify as a crime of violence under USSG § 4B1.2(a)'s Otherwise Clause." Clay, 627 F.3d at 969.

In Bethea, the Fourth Circuit Court of Appeals considered whether, in Mr. Bethea's sentencing for being a felon in possession of a firearm, Mr. Bethea's earlier escape conviction under a South Carolina statute which defined escape broadly making it a crime "for a person, lawfully confined in prison or upon the public works of a county while in the custody of a superintendent, guard, or officer, to escape" was properly considered a crime of violence under the ACCA in view of Chambers. The Court explained as follows:

> When deciding whether an offense constitutes a violent felony under the ACCA, the Supreme Court has made clear that our first step is to determine which of two potentially applicable interpretative methods applies to the challenged statute. First, we are to consider whether the statute proscribes conduct that 'as generally committed' includes an element of violence. Under this categorical approach, the way in which a particular defendant violated the statute on the particular day in question is irrelevant; the only question is whether the statutory language proscribes conduct that involves violence when the offense is considered generically.
> Where a statute broadly criminalizes conduct that could be 'generally committed' in multiple ways, some violent and some not, the categorical approach is inapplicable. Under this so-called, 'modified categorical' approach, a court is entitled to review 'charging documents filed in the court of conviction, or recorded judicial acts of that court,' to determine whether the defendant's crime 'necessarily' constituted the type of generic conduct that would implicate the ACCA. And in determining whether a statute's terms are so broad as to include multiple categories of conduct, some of which would and others which would not constitute violent felonies, we look to how its elements are defined by statute and by the state's supreme court.

Bethea, 603 F.3d at 256 - 257. The Court determined that "[b]ecause it is clear that the term 'to escape' broadly encompasses at least two generic classes of conduct under South Carolina law, including failure to report, *Chambers* requires us to use the modified categorical approach to

determine whether the defendant's conduct was generically violent." <u>Bethea</u>, 603 F.3d at 258. The Court then examined the Indictment charging Mr. Bethea with escape and the sentencing sheet and concluded that "even after considering the relevant documents under the modified-categorical approach, Bethea's conviction for violating [the South Carolina statute] is not a violent felony under the ACCA." <u>Bethea</u>, 603 F.3d at 260. <u>See also</u> <u>United States v. Gomez</u>, 690 F.3d 194 (4th Cir. 2012)(explaining the applicability of the modified categorical approach in considering a conviction under a Maryland child abuse statute.); <u>Moore v. United States</u>, 2012 WL 529879 at *4 (S.D.W.Va.)(Considering the Fourth Circuit's discussion in <u>Bethea</u> respecting the South Carolina statute, District Judge Copenhaver stated in this Section 2255 proceeding that "[t]his suggests the continuing view in our circuit following *Bethea* that unlawfully leaving custody, *i.e.*, a traditional escape, such as that apparently performed here by movant, continues to qualify as a violent felony under the ACCA.")

The undersigned has examined the following decisions applying <u>Chambers</u>, four of which consider whether escape convictions under 18 U.S.C. § 751(a) should be regarded crimes of violence, and notes that the Courts issuing those decisions employed the modified categorical approach. <u>United States v. Koufos</u>, 666 F.3d 1243, 1250 - 1254 (10th Cir. 2011)(Applying modified categorical approach in considering prior conviction under 18 U.S.C. § 751(a) for escaping from custody at United States District Courthouse while awaiting arraignment and concluding that the escape involved "a serious potential risk of physical injury" and constituted a crime of violence under the Guidelines as the District Court found.) ; <u>United States v. Oaks</u>, 665 F.3d 719, 721 (6th Cir. 2011)(Prior escape conviction for running from a non-secure courtroom "not a violent felony for sentencing purposes."); <u>United States v. Furqueron</u>, 605 F.3d 612, 616 (8th Cir. 2010)(Prior

Minnesota escape conviction for escaping from a county jail by taking advantage of a security breach "constitutes a crime of violence for purposes of the sentencing guidelines."); United States v. Lee, 586 F.3d 859, 873 - 874 (11th Cir. 2009)(Prior conviction under New Jersey law of third degree escape for leaving a halfway house without permission not a crime of violence under ACCA.); United States v. Shipp, 589 F.3d 1084, 1089 - 1091 (10th Cir. 2009)(Prior escape conviction for failing to report to a penal institution after release on official pass not a crime of violence under the ACCA. The Court further found that "Chambers does not present a new constitutional rule of criminal procedure, but rather a substantive rule of statutory interpretation" and concluded that "the Supreme Court's construction of the ACCA in Chambers applies retroactively . . . on collateral review."); United States v. Hart, 578 F.3d 674, 680 - 681 (7th Cir. 2009)(Considering prior conviction under 18 U.S.C. § 751(a) for leaving halfway house without permission, the Court of Appeals stated that "[i]t is clear from our cases that the statute prohibits not only escapes from secure custody, but also walkaways from nonsecure custody and failures to report at the end of an authorized period of freedom. Thus, the federal escape statute covers a wide range of conduct, from violent jailbreaks to quiet walkaways to passive failures to report. (Citations omitted.) It does not, however enumerate explicitly the numerous ways in which the statute can be violated." and holding that "a violation of 18 U.S.C. § 751(a), as a categorical matter, is not a crime of violence under the Sentencing Guidelines.") ; United States v. Hopkins, 577 F.3d 507, (3rd Cir. 2009)(Prior conviction under Pennsylvania law of second degree misdemeanor escape for escaping from arrest without force or violence not a crime of violence under the Guidelines."); United States v. Charles, 576 F.3d 1060, 1069 (10th Cir. 2009)(Remanding to the District Court to determine whether under Chambers prior conviction under 18 U.S.C. § 751(a) for escaping the custody of a

halfway house "was a career-offender-qualifying escape from custody."); United States v. Pratt, 568 F.3d 11, 22 (1st Cir. 2009)(Prior conviction for escaping from county jail by crawling under a fence and leaving the area considered "a violent felony within the meaning of the ACCA.");United States v. Ford, 560 F.3d 420 (6th Cir. 2009)(Prior conviction under Kentucky law of second degree escape for leaving a detention facility not a crime of violence.); United States v. Pearson, 553 F.3d 1183, 1186 (8th Cir. 2009)("§ 751(a) is overinclusive because it covers conduct which does and does not trigger the career offender enhancement. (Citation omitted) Thus, we apply a modified categorical approach . . ..").

Applying the modified categorical method as Courts have uniformly since Chambers in considering escape convictions under 18 U.S.C. §751(a), the Court considers the documents charging Petitioner with escape, Petitioner's plea agreement and colloquy and judicially determined facts indicating whether Petitioner's conduct amounted to a crime of violence or not under the statute. United States v. Koufos, 666 F.3d at 1250 - 1251. In doing so, the Court determines in view of U.S.S.G. §§ 4B1.1 and 4B1.2 (1) whether Petitioner's conduct presented a serious potential risk of physical injury to another and (2) whether Petitioner's conduct was similar to the crimes specified in the definition of a crime of violence – burglary of a dwelling, arson, extortion or crimes involving explosives. United States v. Koufos, 666 F.3d at 1251.

The Indictment filed on April 30, 1996, in United States v. Kokoski, Criminal No. 5:96-0064 charged that on or about April 28, 1996, Petitioner, having previously been convicted of a felony offense, escaped from incarceration at the Satellite Prison Camp of the Federal Correctional Institution – Beckley in violation of 18 U.S.C. § 751(a). Petitioner pled guilty to the offense charged in the Indictment in February, 2000. Petitioner has indicated that the District Court found that while his escape from custody did not involve the use or attempted use of violence, his escape from custody

had a propensity for violence and qualified as a crime of violence and sentenced him under the career offender provision of the United States Sentencing Guidelines. <u>Kokoski v. United States</u>, Criminal No. 5:00-0072 (Document No.122, p. 6 at fn 5.) Petitioner was convicted therefore under Section 751(a) for escaping from the Satellite Prison Camp, a minimally secure facility. While as it happened he did not use or attempt to use violence against another person in escaping, his conduct in escaping custody was active and aggressive. If Petitioner had met with a correctional officer as he was determined to escape, violence may well have occurred. Petitioner's conduct was not passive such as when a furloughed inmate fails to return to custody. The undersigned therefore finds that Petitioner was convicted under the language of Section 751(a) which makes it a felony to "escape from the custody of the Attorney General" and Petitioner's conduct underlying his Section 751(a) conviction was akin to the burglary of a dwelling, arson, extortion or crimes involving explosives insofar as it was active and aggressive and presented a serious potential risk of physical injury to another person. The undersigned concludes that Petitioner's conduct in escaping from the Satellite Prison Camp – Beckley remains a qualifying crime of violence under the career offender provisions of the United States Sentencing Guidelines following <u>Chambers</u> and no fundamental error occurred in the District Court respecting Petitioner's escape conviction and sentence. Petitioner is therefore not entitled to a Writ of Coram Nobis or Audita Querela, and his request must be denied.

## **PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Petitioner's Petition for the Writs of Coram Nobis and of Audita Querela (Document No. 198.), **DISMISS** this matter and **REMOVE** this matter from the Court's docket.

Petitioner is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(e) of the Federal Rules of Criminal Procedure, Petitioner shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of these Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner who is acting *pro se* at 633 Lebanon Road, Clarksville, Ohio 45113..

Date: November 29, 2012.

*R. Clarke VanDervort*
R. Clarke VanDervort
United States Magistrate Judge