## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

MICHAEL KOKOSKI,

      Petitioner,

v.                                                     CIVIL ACTION  NO. 5:12-2150
                                                       (Criminal No. 5:96-00064)

UNITED STATES OF AMERICA,

      Respondent.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Petitioner's written objections (ECF No. 203) to the Magistrate Judge's Proposed Findings and Recommendations (ECF No. 201). For the reasons stated below, Petitioner's written objections are **DENIED**, the Court **ADOPTS in part** the Magistrate Judge's Proposed Findings and Recommendations, **DENIES** the Petition, and **DISMISSES** this action from the docket of this Court. However, this Court denies the Petition on different grounds than those used in the Proposed Findings and Recommendations as outlined below.

### I.      Statement of Facts

In July 1994, Petitioner Michael Kokoski pled guilty to employing a person under eighteen years of age to distribute LSD, in violation of 21 U.S.C. §§ 841(a)(1) and 861(a)(1). *United States v. Kokoski*, No. 5:92-cr-0090 (S.D. W. Va.). He was later sentenced to 144 months' imprisonment and six years of supervised release, and was ordered to pay a $5,000 fine.

On April 28, 1996, while serving his term of imprisonment at FCI Beckley's Satellite Prison Camp,[1] he left the Camp without authorization:

> Kokoski simply walked out of the camp. It is undisputed that Kokoski was not confronted during his escape, nor did he have to negotiate any physical barriers. Kokoski was arrested on unrelated charges in Montana in 1999, where he was living under a false name. A fingerprint analysis confirmed Kokoski's identity.

*United States v. Kokoski*, 238 F.3d 416, 2000 WL 1853389, at *1 (4th Cir. 2000), *cert. denied*, 121 S. Ct. 1665 (2001) (summarizing the nature of his escape in opinion denying earlier habeas corpus petition). He later pled guilty on February 3, 2000, to escape, in violation of 18 U.S.C. § 751(a). *United States v. Kokoski*, 5:96-cr-0064 (S.D. W. Va.). For sentencing purposes, this escape conviction was treated as a "crime of violence."[2] Because Petitioner was also at least 18 years old and had at least two prior felony controlled substance convictions, he met the definition of "career offender" under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). Petitioner's classification as a career offender resulted in an increase in his Base Offense Level and Criminal History Category at sentencing.[3] He was sentenced on May 9, 2000, to 37 months' imprisonment, to run consecutively with his earlier sentence, and three years of supervised release.

Petitioner appealed his sentence, arguing that his conviction did not constitute of a "crime of violence." On December 19, 2000, the Fourth Circuit affirmed the District Court's sentence.

---

[1] Satellite Prison Camps are minimum security facilities and have limited or no perimeter fencing. Bureau of Prisons, Prison Types and General Information, http://www.bop.gov/locations/institutions/index.jsp.

[2] "Crime of violence" is defined in U.S.S.G. § 4B1.2(a). See discussion of the Guidelines in Section III of this opinion.

[3] With the career offender classification, Mr. Kokoski had a total offense level of 14, a criminal history category of VI, and a resulting guideline range of 37–46 months. Without the career offender classification, Mr. Kokoski's total offense level would be 11 and his criminal history category would be V, yielding a guideline range of 24–30 months.

*United States v. Kokoski*, 238 F.3d 416, 2000 WL 1853389 (4th Cir. 2000), *cert. denied*, 121 S. Ct. 1665 (2001).[4] Mr. Kokoski thereafter initiated habeas corpus proceedings under Section 2255 regarding his conviction for escape, but the District Court ultimately dismissed his petition in March 2005. *Kokoski v. United States*, No. 5:02-cv-0079, ECF Nos. 118, 139 (S.D. W. Va). He appealed the dismissal; the Fourth Circuit subsequently denied a certificate of appealability and dismissed the appeal in April 2006. *Id.*, ECF No. 170.

On June 14, 2012, Petitioner filed the pending Petition for the Writs of Coram Nobis and of Audita Querela. *Kokoski v. United States*, 5:12-cv-2150, ECF No. 198 (hereinafter "Petition"); *see also United States v. Kokoski*, 5:96-cr-00064, ECF No. 198. In this petition, he sought immediate release from custody on the grounds that he should not have been categorized as a career offender.[5] Magistrate Judge R. Clarke VanDervort issued Proposed Findings and Recommendations ("PF&R") on November 29, 2012, recommending that the District Court deny the Petition. ECF No. 201. Petitioner timely filed written objections to the PF&R on December 17, 2012. ECF No. 203. Petitioner objects to the recommendation that the Petition be denied,

---

[4] "We have consistently held that felony escape is, by its very nature, a crime of violence because, even if accomplished by stealth, there is always the potential for a violent confrontation. *United States v. Hairston*, 71 F.3d 115, 118 (4th Cir. 1995). Kokoski alleges that the minimal security found at federal prison camps justifies an exception from this general rule. The Fifth Circuit rejected this very argument in a factually similar case. *See United States v. Ruiz,* 180 F.3d 675, 676-77 (5th Cir. 1999). The focus is on the crime of conviction (escape), not on an ex post analysis of whether any acts of violence actually occurred. *Id.*" 2000 WL 1853389, at *1.

[5] Petitioner was discharged from imprisonment on June 5, 2008. His supervised release was revoked and he was resentenced to 60 days' imprisonment in March 2010. His supervised release was revoked again in August 2010, and he was resentenced to 34 months' imprisonment; he was serving this term of imprisonment when he filed the pending petition. Both revocations occurred in the Southern District of Ohio, to which jurisdiction over his supervised release had been transferred. *United States v. Kokoski*, No. 1:09-cr-145 (S.D. Ohio). Petitioner claims that "[a]t each re-sentencing, the district court . . . found the Petitioner to be a 'Career Offender' in pronouncing its judgments." Pet. at 5. He also claims that he was prohibited from participating in the Residential Drug Abuse Program in part because of his career offender status. *Id.*

specifically the finding that the escape conviction constituted a "crime of violence" for purposes of the career offender definition. In support of his objections, he cites the same three cases cited in his Petition: *Chambers v. United States*, 555 U.S. 122 (2009); *Begay v. United States*, 553 U.S. 137 (2008); and *United States v. Clay*, 627 F.3d 959 (4th Cir. 2012).

## II.    Standard of Review

This Court's review of the magistrate's proposed findings and recommendations to which Petitioner objects is de novo. 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."). Therefore, this Court will review de novo the magistrate judge's determination that Petitioner's escape conviction was a "crime of violence" such that Petitioner was properly categorized as a career offender.[6]

## III.    Discussion

### A. Assessing Whether Petitioner's Conviction is a Crime of Violence in Light of *Begay*, *Chambers*, *Clay* and Related Recent Case Law

Before discussing recent case law, the Court will turn to the applicable Guideline provisions in this case. "Career offender" is defined in the Guidelines as follows:

---

[6] In his objections, after briefly reiterating why his walk-away escape is not a crime of violence, Petitioner states that "the District Court must reject the proposed [findings and recommendations] and determine that the petitioner was convicted and punished for having committed a violation of the Career Offender Provisions of the United States Sentencing Guidelines to which [sic] he was actually innocent of having violated." The Court believes that the most reasonable interpretation of the objections is that Petitioner is arguing that this conviction should not be treated as a crime of violence, and not that he is claiming actual innocence of a violation of the federal escape statute.

4

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). The Guidelines also define "crime of violence":

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>    (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>    (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.[7]

U.S.S.G. § 4B1.2(a). The Application Note for "crime of violence" elaborates on what qualifies

as a crime of violence in pertinent part as follows:

> "Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.

Application Note 1, U.S.S.G. § 4B1.2.

Petitioner's conviction for escape, which underlies the present Petition, was pursuant to

the following statute:

> Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined

---

[7] The phrase "otherwise involves conduct that presents a serious potential risk of physical injury to another" is referred to as the Otherwise Clause. *See, e.g., Clay*, 627 F.3d 959 (4th Cir. 2010) (footnote not in original).

under this title or imprisoned not more than five years, or both; or if the custody or confinement is for extradition, or for exclusion or expulsion proceedings under the immigration laws, or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction, be fined under this title or imprisoned not more than one year, or both.

18 U.S.C. § 751(a).

In *Begay*, the United States Supreme Court addressed whether driving under the influence of alcohol is a "violent felony" under the Armed Career Criminal Act ("ACCA").[8] 553 U.S. 137 (2008). In determining that it was not a "violent felony," the Court stated that "'to give effect . . . to every clause and word' of this statute, we should read the examples as limiting the crimes that clause (ii) covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves." *Id.* at 143 (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). Therefore, because driving under the influence did not involve "purposeful, violent, and aggressive conduct," unlike the crimes listed by name in the definition of "violent felony,"

---

[8] The ACCA defines "violent felony" as follows:

> [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another

18 U.S.C. § 924(e)(2)(B). Although the ACCA is distinct from the Career Offender enhancement, because the ACCA's definition of "violent felony" word-for-word overlaps with the Guideline's definition of "crime of violence," the Court will consider cases interpreting "violent felony" under the ACCA in addition to cases interpreting "crime of violence" under the Guidelines. *See, e.g., Clay*, 627 F.3d at 965 (noting that when determining if escape is a "crime of violence," the court will "rely upon precedents evaluating whether an offense constitutes a violent felony under the Armed Career Criminal Act (the ACCA), 18 U.S.C. § 924(e)(2)(B), interchangeably with precedents evaluating whether an offense constitutes a crime of violence under USSG § 4B1.2(a).").

the Court would not treat driving under the influence as a violent felony covered by the ACCA. *Id.* at 145-48.

In *Chambers*, the Supreme Court tackled the issue of whether failure to report for weekend confinement was a "violent felony" under the ACCA. The Court held that when the statute of conviction criminalizes multiple forms of conduct—such as escape from custody, failure to report for custody, and failure to follow home confinement—courts should not look at the statute as a whole to determine if it covers "violent felonies;" rather, courts should treat the failure to report as a distinct crime from the others listed in the statute, and then determine if failure to report alone is a "violent felony." 555 U.S. at 125-28. The Supreme Court found that failure to report is in a sense passive, does not pose a serious risk of physical injury to others, and is therefore not a "violent felony."

Courts since then have characterized the *Chambers* decision as utilizing a modified categorical approach. For example, the Fourth Circuit explained *Chambers* as follows:

> When deciding whether an offense constitutes a violent felony under the ACCA, the Supreme Court has made clear that our first step is to determine which of two, potentially applicable interpretive methods applies to the challenged statute. First, we are to consider whether the statute proscribes conduct that "as generally committed" includes an element of violence. *Chambers,* 129 S. Ct. at 690; *Taylor v. United States,* 495 U.S. 575, 598, 110 S. Ct. 2143, 109 L. Ed. 2d 607 (1990). Under this categorical approach, the way in which a particular defendant violated the statute on the particular day in question is irrelevant; the only question is whether the statutory language proscribes conduct that involves violence when the offense is considered generically. *Chambers,* 129 S. Ct. at 690.
>
> Where, however, a statute broadly criminalizes conduct that could be "generally committed" in multiple ways, some violent and some not, the categorical approach is inapplicable. *Id.*; *Taylor,* 495 U.S. at 599, 110 S. Ct. 2143. Under this so-called, "modified-categorical" approach, a court is entitled to review "charging documents filed in the court of conviction, or [ ] recorded judicial acts of that court," to determine whether the defendant's crime "necessarily" constituted the type of generic conduct that would implicate the ACCA. *Shepard v. United States,* 544 U.S. 13, 20, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005); *Taylor,* 495 U.S. at 602, 110 S. Ct. 2143.

*United States v. Bethea*, 603 F.3d 254, 256-57 (4th Cir. 2010) (finding that conviction under South Carolina escape statute was not "necessarily" a violent felony because the charging documents were unclear as to whether the defendant escaped from custody or merely failed to report).[9]

The Fourth Circuit again addressed walk-away escapes head-on in *United States v. Clay*, where it wrestled with whether a defendant's walk-away escape from a non-secure facility, charged pursuant to Georgia law, was a "crime of violence" under the Sentencing Guidelines. After noting that the court should apply a modified categorical approach to its analysis of the Georgia escape statute, it explained that:

> Post *Chambers,* five of our sister circuits[10] have held, in published opinions, that walk-away escape from an unsecured facility is a distinct form of generic conduct that does not involve purposeful, violent, and aggressive conduct that is "roughly similar, in kind as well as in degree of risk posed: [ ]to the enumerated crimes of burglary of a dwelling, arson, extortion, or crimes involving the use of explosives, and therefore, does not fall within the Otherwise Clause of, in some cases the ACCA, in others USSG § 4B1.2(a).

---

[9] Therefore, the *Bethea* court did not conclusively determine if walk-away escape from an unsecured facility is a violent felony. *Clay*, 627 F.3d at 968 (discussing *Bethea*).

[10] The Court of Appeals cited the following five cases: *United States v. Lee,* 586 F.3d 859 (11th Cir. 2009) (walk-away escape from halfway house was not a violent felony under the ACCA); *United States v. Hopkins,* 577 F.3d 507 (3d Cir. 2009) (finding that flight during misdemeanor arrest was not a crime of violence, because the flight "did not present a serious potential risk of injury to another comparable to offenses such as burglary and arson enumerated in the Sentencing Guidelines"); *United States v. Hart,* 578 F.3d 674 (7th Cir. 2009) (choosing not to apply modified categorical approach to 18 U.S.C. § 751(a) conviction for walk-away escape from halfway house); *United States v. Ford,* 560 F.3d 420 (6th Cir. 2009) (finding Kentucky conviction for second-degree escape was not crime of violence, where conduct was walk-away escape); *United States v. Charles,* 576 F.3d 1060 (10th Cir. 2009) (addressing walk-away escape from halfway house and remanding for reconsideration in light of *Chambers*). *Bethea* cites the same five cases for the same proposition. 603 F.3d at 259-60. Footnote not in original.

*Id.* at 969 (quoting *Begay*, 553 U.S. at 143). The rationale in each case, it opinined, was that walk-away escape did not involve breaking through or out of security devices, and that perpetrators would likely avoid violence or law-breaking afterwards in order to evade detection. *Id.* The Fourth Circuit therefore likewise held that walk-away escape from an unsecured facility is not a "crime of violence."[11]

Some cases apply *Chambers* in the context of convictions under 18 U.S.C. § 751(a), the statute of conviction in this case. To tackle this issue, courts widely hold that a modified categorical approach should be utilized for determining if convictions under 18 U.S.C. § 751(a) are crimes of violence or violent felonies.[12] For example, in *United States v. Koufos*, the Tenth Circuit stated that the modified categorical approach should be used when determining if a conviction under 18 U.S.C. § 751(a) was a crime of violence, which allowed the Court to look at many pertinent documents:

> Under a modified categorical approach, we examine "the statutory elements, the defendant's charging documents, plea agreement and colloquy (if any), and the uncontested facts found by the district judge to determine whether the particular defendant's conduct violated the portion of the statute that is a crime of violence." *United States v. Wise*, 597 F.3d 1141, 1144 (10th Cir. 2010). This approach does not involve a subjective inquiry into the facts of the case; instead, we seek to determine "which part of the statute was charged against the defendant and, thus, which portion of the statute to examine on its face." *United States v. Sanchez–*

---

[11] Only one case citing *Clay* discusses the federal escape statute at issue in the instant case, 18 U.S.C. § 751(a). That case, however sheds no light on resolution of Petitioner's objection. *Constant v. Zeigler*, No. 5:11-cv-1007, 2012 WL 2958190 (S.D. W. Va. June 28, 2012).

[12] Notably, the Seventh Circuit holds that a conviction under 18 U.S.C. § 751(a) "as a categorical matter, is not a crime of violence." *United States v. Hart*, 578 F.3d 674, 681 (7th Cir. 2009). However, at least seven other circuits have applied a modified categorical approach to this federal statue and state statutes like it. *United States v. Parks*, 620 F.3d 911, 914 & n.4 (8th Cir. 2010) (adopting modified categorical approach to 18 U.S.C. § 751(a) "and similar broadly worded state escape statutes" in the Eighth Circuit, "like all other circuits to address the question" except the Seventh Circuit; citing cases in the first, second, sixth, ninth, tenth, and eleventh circuits).

> *Garcia,* 501 F.3d 1208, 1211 (10th Cir. 2007) (internal quotation marks and citation omitted).

666 F.3d 1243, 1250-51 (10th Cir. 2011), *cert. denied*, 132 S. Ct. 2787 (2012).[13] The court used a two-part inquiry to decide if the conviction at hand was a crime of violence: 1) does the offense present a serious potential risk of physical injury to another, and 2) is the offense "roughly similar, in kind as well as degree of risk posed" to the crimes listed in § 4B1.2(a)(2), meaning that it "typically involve[s] purposeful, violent, and aggressive conduct." *Id.* at 1251 (quoting *United States v. Wise*, *597* F.3d 1141, 1144 (10th Cir. 2010)). The court found that the defendant's escape from custody while awaiting arraignment at a courthouse involved "affirmative"—rather than passive—conduct, in addition to likely creating a serious risk of physical injury to others; therefore, the conviction was a crime of violence.  *See also United States v. Hughes*, 602 F.3d 669, 677 (5th Cir. 2010) (holding that, where indictment charged defendant with "escape . . . from an[ ] institution . . . in which he is confined," defendant had committed crime of violence; noting that "[u]nlike failure to report, escape is typically committed in a purposeful manner, and when these escapes cause injuries, those injuries typically result from intentional action, not negligence or even recklessness."); *United States v. Delgado*, No. CRIM. C-08-104, 2011 WL 1155720 (S.D. Tex. Mar. 28, 2011) (holding that walk-away escape from halfway house, charged under 18 U.S.C. § 751(a), is a crime of violence, based on Fifth Circuit precedent).

---

[13] *See also United States v. Kinsey*, 406 Fed. App'x 1, at *3 (6th Cir. 2010) (internal citations and quotation marks omitted) (unpublished decision) (under the modified categorical approach, "the court must look at the indictment, guilty plea, and similar documents to determine whether those documents *necessarily* establish the nature of the committed crime," but such "documents may not be used to examine how an individual offender might have committed [the offense] on a particular occasion, but only how an offense is ordinarily committed based upon its elements." (emphasis in original)).

Judge Copenhaver, in *Moore v. United States*, 2:10-cv-0926, 2012 WL 529879, at *4 (S.D. W. Va. Feb. 17, 2012), considered whether a defendant's state conviction for jumping out the sheriff's office window while handcuffed was a violent felony. After discussing many of the cases recited here, such as *Begay*, *Bethea*, *Chambers*, and *Clay*, Judge Copenhaver stated as follows:

> In sum, a traditional escape, the category into which movant's offense most comfortably fits, remains an ACCA predicate [violent felony] in this circuit. To the extent distinctions might be drawn between a jailbreak from within prison walls or that of a handcuffed pretrial detainee jumping from a window in a room in the vicinity of a courtroom where the accused is scheduled to appear, the jurisprudence has not caught up with movant's legal position.
>
> The decision in *Clay* changes nothing in that regard for at least three reasons. First, and most obviously, movant's direct appeal was decided long before that decision and neither *Begay* (DUI) nor *Chambers* (failure to report) necessarily forecast the result reached in *Clay* (walk away from an unsecured facility). Second, *Clay* did not involve a traditional escape, which, again, is more akin to the conduct engaged in by movant. Third, the question is not whether movant's interpretation of *Begay* and its progeny is correct. It is whether his lawyer's failure to raise *Begay* on direct appeal resulted in prejudice to him as contemplated by *Strickland, Smith,* and *Bell.*

2012 WL 529879, at *7. This reasoning seems to reconcile *Bethea* with *Clay* in that while a "traditional" escape from custody is distinguished from failure to report, it is also distinguished from walk-away escape from a non-secure facility.

With these cases in mind, the Court now turns to the present Petition. First, the Court notes that it is appropriate to assess Petitioner's conviction under the modified categorical approach, in line with the Fourth Circuit's approach in *Clay*. Because of this, the Court must consider the indictment, plea, and similar documents. Petitioner's indictment states that the Petitioner "did knowingly escape from an institution, that is, the Satellite Prison Camp [at FCI Beckley] . . . in which [he] was confined." Indictment, No. 5:96-cr-00064. In February 2000, he pled guilty to this charge. The PF&R characterizes Petitioner's conduct as "not passive,"

distinguishing it from a failure to return to custody, and state that violence could have occurred if Petitioner had encountered someone during his escape. For this reason, the Magistrate found the conviction to be similar to the other crimes listed in the definition of "crime of violence," and that it posed a serious potential risk of violence. In the sentencing transcript, however, this Court noted that it "felt compelled" to classify Petitioner's escape as a crime of violence based on existing case law, although his conduct was nonviolent. ECF No. 101 at 39;[14] *see also id.* at 26.

Based on the weight of authority above, Petitioner's walk-away escape from the satellite prison camp would not be classified as a "crime of violence" today. Given *Clay*'s pronouncement that walk-away escape is not a crime of violence, *Moore*'s distinguishing of traditional escape from custody from walk-away escape, and the authority of other circuits cited by *Clay*, Petitioner's escape should not be treated as a crime of violence under current case law. This Court has found nothing in the record that suggests this escape was committed in a violent or aggressive way, or that is posed a serious risk of potential physical injury. The PF&R only cites *Moore* for the proposition that "traditional" escape is a violent felony in the wake of *Bethea*, but does not reconcile *Moore* with the walk-away escape found in this case, and the PF&R gives no reason why *Clay* is distinguished from this Petition. Also, both the plea transcript and sentencing transcript indicate that Petitioner's conduct did not pose a serious risk of physical injury. For these reasons, the conviction is not a crime of violence. The determination that his conviction is not a crime of violence, however, is not the end of this Court's analysis.

---

[14] "As I've indicated, I've felt compelled by the applicable Fourth Circuit case law to apply the career offender status to you even though in this case I don't think there was any violence or significant risk of violence in fact from your conduct, but that's not, unfortunately, what the law requires me to apply at this time." ECF No. 101 at 39.

### B.  Determining if Petitioner is Entitled to the Writ

Because Petitioner's conviction for escape is not a "crime of violence" under recent case law, it is now necessary to turn to whether Petitioner can ultimately succeed in being granted the writ. The writ of coram nobis, in its common law form, was meant "to correct errors of fact," namely "technical errors." *See Bereano v. United States*, 706 F.3d 568, 576 (4th Cir. 2013) (quoting *United States v. Denedo*, 556 U.S. 904, 910-11 (2009) (internal quotation marks omitted)). Today that writ "'is broader than its common-law predecessor' and 'can issue to redress a fundamental error . . . as opposed to mere technical errors.'" *Id.* (quoting *Denedo*, 556 U.S. at 911). The Fourth Circuit has adopted the following standard for considering a writ of coram nobis:

> In order for a district court to reach an ultimate decision on coram nobis relief, a petitioner is obliged to satisfy four essential prerequisites. First, a more usual remedy (such as habeas corpus) must be unavailable; second, there must be a valid basis for the petitioner having not earlier attacked his convictions; third, the consequences flowing to the petitioner from his convictions must be sufficiently adverse to satisfy Article III's case or controversy requirement; and, finally, the error that is shown must be "of the most fundamental character."

*Id.* (quoting *United States v. Akinsade*, 686 F.3d 248, 252 (4th Cir. 2012)).

As to the first prong, this Court notes that it is possible for a petitioner to meet this prong even if the petitioner is no longer in custody. *Akinsade*, 686 F.3d at 252 ("Akinsade cannot seek relief under the typical remedies for a direct or collateral attack of a federal judgment and sentence because he is no longer in custody."). In this case, Petitioner is neither in custody nor subject to supervised release at this time. Petitioner's "career offender" status will only matter if he faces another conviction. In that instance, the usual remedy *is* available: if Petitioner were again convicted and brought before a court for sentencing, he would be able to argue that his walk-away escape is not a crime of violence in light of recent case law as applicable to that

13

pending sentencing. Therefore, Petitioner does not meet prong one, which is sufficient grounds for denying the writ.

In regards to the second prong, *Begay*, *Chambers*, and *Clay* were decided years after his conviction and sentencing for escape, and years after his appeal and Section 2255 petition. Petitioner, however, did not file the present Petition until June 14, 2012, well over three years after *Chambers* was decided on January 13, 2009, and even longer after the decision in *Begay* on April 16, 2008. Furthermore, Petitioner did not make this filing until well over a year after his March 2010 and August 2010 supervised release revocations.[15] To contrast this with *Bereano*, there the petitioner commenced litigation less than a year after the decision he asked to be applied retroactively was issued. *See* 706 F.3d at 576 ("Bereano's reason for not launching an earlier attack on his convictions is a valid one, in that the Supreme Court only recently rendered the primary decision on which he relies"). While the test above does not present a set time limit for filing coram nobis petitions, unlike Section 2255 petitions, it would be unfair to allow Petitioner to seek coram nobis relief at this time when such relief could have been pursued years ago. *United States v. Rocky Mt. Corp.*, 442 Fed. App'x 875, 876 (4th Cir. 2011) (unpublished decision) ("[Petitioner] Rocky Mountain has failed to meet its burden to show that valid reasons exist for not attacking its conviction earlier. Although there is no firm limitation of time within which a writ of coram nobis will lie, petitioners are required to demonstrate that 'sound reasons exist[] for failure to seek appropriate earlier relief.'" (quoting *United States v. Morgan*, 346 U.S. 502, 512 (1954))); *see also Berry v. United States*, 468 Fed. App'x 924, 925 (11th Cir. 2012)

---

[15] Petitioner did file a petition for a writ of mandamus or prohibition around July 2010 and a petition under Section 2255 in February 2012 in the Sixth Circuit. *See United States v. Kokoski*, No. 1:09-cr-145 (S.D. Ohio), ECF Nos. 47, 67. However, the pertinent issue is the date of the filing of the pending Petition.

(unpublished decision).[16] Because there is no sound reason for the delay in filing the instant Petition, this provides an independent ground for denying the Petition.

Petitioner's classification as a career offender in his sentencing is not a sufficiently adverse consequence to meet the third prong. *See United States v. Mandel*, 862 F.2d 1067, 1075 (4th Cir. 1988) (footnote omitted) (citing *United States v. Travers*, 514 F.2d 1171, 1178-79 (2d Cir. 1974)) (granting writ of coram nobis where petitioners would otherwise "face the remainder of their lives branded as criminals"). Here, having been designated a career offender for the limited purposes of his now-completed sentence carries no legal effect of stigma.

The fourth prong—error "of the most fundamental character"—is the most challenging to resolve. For Petitioner to succeed on this prong, he must show that a retroactively-applicable change in law would have altered the outcome of his case. *See United States v. Mandel*, 862 F.2d 1067, 1075 (4th Cir. 1988) (citing *United States v. Travers,* 514 F.2d 1171 (2d Cir. 1974)) ("We follow the Second Circuit, which, in an opinion by Judge Friendly, has specifically allowed the granting of a writ of error *coram nobis* in light of a retroactive dispositive change in the law of mail fraud"; *see also United States v. Hernandez-Monreal*, 404 Fed. App'x 714, 715 n* (4th Cir. 2010) (citing *Mandel* above) (unpublished decision); *Bereano v. United States*, CIV.A. WMN-11-961, 2012 WL 683545, at *2 (D. Md. Feb. 28, 2012), *aff'd*, 706 F.3d 568 (4th Cir. 2013).

Other circuits are divided on *Chambers*'s retroactive applicability on collateral review. *Compare United States v. Shipp,* 589 F.3d 1084 (10th Cir. 2009) (holding that *Chambers* applies

---

[16] "The Chambers decision was an extension of the Supreme Court's decision in *Begay v. United States*, 553 U.S. 137, 128 S. Ct. 1581, 170 L. Ed. 2d 490 (2008); the limitations period under Section 2255(f)(3) starts to run from 'the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.' 28 U.S.C. § 2255(f)(3). The district court concluded that even if *Begay* and *Chambers* applied retroactively, Berry had only to 16 April 2008 -- one year from the date *Begay* issued -- to file his motion."

retroactively to collateral review of convictions, based on *Teague v. Lane,* 489 U.S. 288 (1989)

and subsequent authority), *with Vargas v. United States*, No. 2:09CV766-WKW, 2012 WL

3023220, at *8 (M.D. Ala. June 29, 2012) (stating that *Chambers* does not apply retroactively to

Section 2255 petitions in the Eleventh Circuit because "*Chambers* includes no statement from

the Supreme Court that the decision applies retroactively to a case on collateral review").

 The Court of Appeals for the Fourth Circuit has not conclusively stated whether

*Chambers* applies retroactively in habeas cases.[17] The District Court for the Northern District of

West Virginia has held that *Chambers* and *Clay* do not apply retroactively to cases where the

appeal and first habeas motion have been exhausted before the change in law was decided, albeit

in the context of a petition under Section 2255:

> [A]t the time of conviction, the settled law of the Fourth Circuit established the
> legality of the petitioner's ACCA conviction. However, in 2009, the United States
> Supreme Court held that the generic crime of failing to report to a penal
> institution did not qualify as a "violent felony" under the ACCA. *Chambers v.
> U.S.,* 555 U.S. 122, 691, 692 (2009). Moreover, on December 8, 2010, the Fourth
> Circuit held "that the generic crime of walk-away escape from an unsecured
> facility does not qualify as a 'crime of violence' under the career offender
> Sentencing Guidelines.["] *U.S. v. Clay,* 627 F.2d 959, 969 (2010). It would appear
> that the *Chambers* and *Clay* cases reflect a substantive change of law which **may**
> demonstrate that the conduct involved in the petitioner's first conviction for
> felony escape is no longer criminal. Additionally, that change occurred after his
> direct appeal and first section 2255 motion. Because these cases do not establish a
> "new rule of constitutional law, made retroactive to cases on collateral review by
> the Supreme Court," the petitioner cannot satisfy the "gate-keeping" requirements
> of sections [sic] 2255, and the petitioner appears to have satisfied the "savings
> clause" of section 2241.

*Key v. O'Brien*, No. 5:11-cv-11, 2011 WL 3648238, at *3 (N.D. W. Va. July 19, 2011)

(emphasis in original), *report and recommendation adopted*, 2011 WL 3648236 (N.D. W. Va.

---

[17] As a preliminary note, it appears that *Chambers* did mark a departure from prior circuit
precedent, making it a new rule. *See Bethea*, 603 F.3d 254, 257 ("Until recently, the question of
which approach to apply to the escape statute before us would likely have been resolved by
Circuit precedent. In *United States v. Hairston,* 71 F.3d 115 (4th Cir. 1995), we considered a
similar North Carolina escape statute and held that under the categorical approach, an escape
conviction constituted a violent felony under the ACCA. *Id.* at 117.").

Aug. 18, 2011). Arguably, because the requirement that a "new rule of constitutional law" must be "made retroactive to cases on collateral review by the Supreme Court" appears in Section 2255, and the present Petition is not under Section 2255, then that requirement does not factor into the present analysis.

As the case above notes, the Supreme Court has not explicitly made *Chambers* retroactively applicable. The Fourth Circuit, however, in at least one instance, examined retroactivity under the *Teague* framework. In *United States v. Powell*, 691 F.3d 554, 563 (4th Cir. 2012), the Court of Appeals addressed the retroactivity of the *Carachuri* rule.[18] The Court of Appeals discussed the standard of determining retroactivity in light of *Teague v. Lane,* 489 U.S. 288 (1989), under which "well-established legal rules—old rules—are applicable on collateral review, while new rules generally are not." *Id.* at 557 (citation omitted). A new rule can nonetheless have retroactive effect, however, if it is a new substantive rule (rather than procedural rule) or if the rule is a "watershed" change in criminal procedure. *Id.* at 557-58.[19]

*Chambers* and its progeny do not represent a "watershed" shift in criminal law. *See id.* at 558 (noting that "[s]ince *Teague*, the Supreme Court has reviewed numerous claims that various new rights fall within this exception, and it has rejected every single one of them."). At least two circuits have found that *Chambers* is a new substantive rule. *See Narvaez v. United States*, 674

---

[18] Under that rule, "the question of whether a prior conviction is an 'aggravated felony' as used in the Immigration and Nationality Act ('INA') must be resolved by looking at the offense for which the defendant was actually convicted, not the offense for which he could have been convicted in view of his conduct." *Powell*, 691 F.3d at 555.

[19] "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes." [*Schriro v. Summerlin*, 542 U.S. 348,] 353, 124 S. Ct. 2519 [(2004)]. By contrast, a rule is procedural if it merely regulates "*the manner of determining* the defendant's culpability." *Id.* [emphasis in original.] And such procedural rules do not generally apply retroactively." *Powell*, 691 F.3d at 558. The Fourth Circuit held that the *Carachuri* rule was procedural, and therefore not retroactively applicable.

F.3d 621, 625 (7th Cir. 2011) (holding that *Begay* and *Chambers* apply retroactively); *Welch v. United States*, 604 F.3d 408, 415 (7th Cir. 2010); *United States v. Shipp,* 589 F.3d 1084, 1090 (10th Cir. 2009) (finding that "*Chambers*' construction of the ACCA overrules our prior jurisprudence attributing violence to escape offenses that did not involve the use, attempted use, or threat of the use of physical force against another."). However, it is worth noting that in *Shipp*, the defendant was sentenced above the statutory maximum because of his classification under the ACCA. Petitioner, in contrast, contests application of the Guidelines, which are not mandatory. Also, his sentence under the Guideline range was less than the five-year maximum authorized by statute. *See Hawkins v. United States*, 706 F.3d 820 (7th Cir. 2013) (denying Section 2255 petition, where sentence was three-quarters complete, and noting that judges have the authority to set a sentence outside the Guideline range); *Jones v. United States*, 689 F.3d 621, 626 n.3 (6th Cir. 2012) ("The First Circuit, however, has suggested in dicta that a change in the First Circuit's interpretation of the career-offender enhancement in the U.S. Sentencing Guidelines 'affects only the procedure by which a district court calculates a defendant's sentence. It . . . is not a retroactive substantive change in the law.'" (quoting *United States v. Giggey*, 551 F.3d 27, 36 n.3 (1st Cir. 2008))); *Sun Bear v. United States*, 644 F.3d 700, 704-05 (8th Cir. 2011) ("[T]his court and our sister circuits have consistently held 'that ordinary questions of guideline interpretation falling short of the "miscarriage of justice" standard do not present a proper section 2255 claim.'" (citing *Auman v. United States*, 67 F.3d 157 (8th Cir. 1995); *United States v. Williamson*, 183 F.3d 458 (5th Cir. 1999); *Graziano v. United States*, 83 F.3d 587 (2d Cir. 1996))); *Gilbert v. United States*, 640 F.3d 1293, 1316 (11th Cir. 2011), *cert. denied*, 132 S. Ct. 1001 (2012) (denying Section 2241 petition where "[t]he circumstances are that an unquestionably guilty defendant, who was sentenced to less than the statutory maximum,

18

claims that the sentencing guidelines were misapplied in his case based on decisions that were issued years after his sentence became final on direct appeal and years after his § 2255 motion was denied."). Therefore, Petitioner does not meet the fourth prong, which is another independent ground for denying this Petition.

Based on the above, although Petitioner's escape should not be classified as a crime of violence under recent case law if his conviction and sentencing occurred today, the Petition is nonetheless denied because Petitioner has not satisfied the test for showing that he is entitled to the writ of coram nobis.

## IV.    Certificate of Appealability

The Court additionally has considered whether to grant a certificate of appealability. *See* 28 U.S.C. § 2253(c). A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this Court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001). The Court concludes that the governing standard is not satisfied in this instance. Accordingly, the Court **DENIES** a certificate of appealability.

## Conclusion

For reasons stated above, Petitioner's written objections are **DENIED**, the Court **ADOPTS in part** the Magistrate Judge's Proposed Findings and Recommendations, **DENIES** the Petition, and **DISMISSES** this action from the docket of this Court.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.


ENTER: March 29, 2013


ROBERT C. CHAMBERS, CHIEF JUDGE